In re Michael **HAMMOND** and Jeanette Hammond, Debtors.

In re Michael **HAMMOND** and Jeanette Hammond, Plaintiffs,

v.

**COMMONWEALTH MORTGAGE COMPANY OF AMERICA, L.P.**, Defendant.

Bankruptcy No. 90–10093.

Adv. No. 90–0042.

Civ. A. No. 90–5606.

United States District Court, E.D. Pennsylvania.

July 2, 1993.

---

Leslie J. Carson, Jr., Lawrence T. Phelan, Federman & Phelan, Philadelphia, PA, for Commonwealth Mortgage Co. of America, appellant.

Jane B. Mac Elhenney, Philadelphia, PA, for Michael Hammond, Jeanette Hammond, appellee/debtor.

Edward Sparkman, Philadelphia, PA, trustee.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

## I. INTRODUCTION

This is a bankruptcy appeal. The appellant-mortgagee, Commonwealth Mortgage Company of America, L.P. ("Commonwealth"), has sought appellate review of the bankruptcy court's July 30, 1990 order limiting its secured claim against Michael and Jeanette Hammond ("the Debtors") to $25,000.

Jurisdiction over this bankruptcy appeal in this Court is pursuant to 28 U.S.C. § 158(a). Having reviewed the appellate briefs submitted by the parties (Document Nos. 3–5), as well as the record on appeal (Document No. 1), which includes the July 30, 1990 order of the bankruptcy court and a stipulation of facts, and for the reasons set forth below, I shall affirm the bankruptcy court's judgment allowing the bifurcation of Commonwealth's claim into secured and unsecured components, and remand this case for an inquiry into whether any adjustment of the secured component of Commonwealth's claim is required in accordance with the discussion which follows.

## II. FACTUAL BACKGROUND

Commonwealth is the holder of a residential mortgage given by the Debtors. The Debtors filed a bankruptcy petition on January 8, 1990 under Chapter 13 of the Bankruptcy Code. Commonwealth subsequently filed a Proof of Claim form in the Debtors' bankruptcy on the debt secured by the

mortgage in the amount of $42,969.93.[1] The Debtors thereafter filed a so-called adversary proceeding in their bankruptcy seeking to limit Commonwealth's allowed secured claim to the fair market value of the premises secured by the mortgage under 11 U.S.C. § 506 by bifurcating this claim into secured and unsecured components. The bankruptcy court agreed with the Debtors and entered an order on July 30, 1990 limiting Commonwealth's secured claim to the fair market value of the premises securing the mortgage.[2] *See Hammond v. Commonwealth*, No. 90–10093 (Bankr.E.D.Pa. July 30, 1990), Record on Appeal, at Tab 7.

Commonwealth has appealed the bankruptcy court's order, arguing that the court should have denied the bifurcation of its claim, because 11 U.S.C. § 1322(b)(2) proscribes modification of a claim secured only by a security interest in real property that is the debtor's principal residence. Commonwealth, which is statutorily insured by the United States Department of Housing and Urban Development ("HUD") against loss as a holder of the Debtors' mortgage pursuant to Sections 203 and 204 of the National Housing Act, 12 U.S.C. §§ 1709–10, has also argued that the bankruptcy court should have found it to be secured to the full extent of its statutory mortgage insurance.[3]

## III.  DISCUSSION

### A.  The Scope of Review on Appeal

■ The scope of review of the district court here is well-settled. Findings of fact of a bankruptcy court may not be set aside unless clearly erroneous. *See Sapos v. Provident Inst. of Sav.*, 967 F.2d 918, 922 (3d Cir.1992) (citing *Brown v. Pennsylva-*

*nia State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988)). The clearly erroneous standard of review for findings of fact does not apply, however, in examining conclusions of law by a bankruptcy court. Legal conclusions of a bankruptcy judge are subject to a plenary review by a district court on appeal. *See Id.*

### B.  Modification of a Claim Secured by a Homestead Mortgage

At the core of this dispute is the interplay between two Bankruptcy Code provisions: 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). The relationship between these two sections has been examined by courts on numerous occasions. Chapter 13 of the Bankruptcy Code permits debtors to adjust their indebtedness through a repayment plan approved by a bankruptcy court. Section 1322 covers such repayment plans. The pertinent part of section 1322 here is section 1322(b)(2). This provision states that the repayment plan may

> modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2) (emphasis added). Section 506(a), which defines allowed secured and allowed unsecured claims in bankruptcy, provides as follows:

> *An allowed claim of a creditor secured by a lien on property in which the estate has an interest,* or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the*

---

**1.** Commonwealth's claim consists of the following:

| | |
|---|---|
| Principal | $22,108.71 |
| Interest to the date of bankruptcy | 13,165.59 |
| Late Charges | 649.43 |
| Escrow deficit | 4,006.57 |
| Mortgage foreclosure expenses | 3,039.63 |
| Total: | $42,969.93 |

**2.** The parties have stipulated that the fair market value of the premises is $25,000.

**3.** Under 24 C.F.R. §§ 203.350, 203.650, the Secretary of HUD will not accept assignment of a mortgage when a mortgagee, such as Common-

wealth, is prevented by law from foreclosing on the mortgage. This regulatory limitation on the assignment of mortgages is a key factor in the instant case, because 11 U.S.C. § 362(a), the so-called automatic stay provision of the Bankruptcy Code, prevents a mortgage company from foreclosing on a mortgage once a bankruptcy petition by the mortgagor is filed. Because Commonwealth is precluded by section 362(a) from foreclosing on the Debtors' residence, it may not, pursuant to the HUD regulations just discussed, assign its mortgage to HUD. Such an assignment is a prerequisite to the receipt by Commonwealth of the proceeds of its statutory mortgage insurance.

*value of such creditor's interest in the estate's interest in such property,* or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest* or the amount so subject to setoff *is less than the amount of such allowed claim.*

11 U.S.C. § 506(a) (emphasis added). The Supreme Court has summarized this provision by explaining that it "provides that a claim is secured only to the extent of the value of the property on which the lien is affixed; the remainder of that claim is unsecured." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989).

The question that arises from the interplay between sections 506(a) and 1322(b)(2) is whether section 1322(b)(2) precludes a debtor from relying upon section 506(a) to modify the unsecured portion of an undersecured homestead mortgage claim. On the two occasions that the Court of Appeals for the Third Circuit has considered this issue, it answered it in the negative, thus allowing debtors to invoke section 506(a) to bifurcate an undersecured homestead mortgage claim into secured and unsecured portions based on the fair market value of the residence at the time of the modification and the value of any additional securities. *Sapos,* 967 F.2d at 928; *Wilson v. Commonwealth Mortgage Corp.,* 895 F.2d 123, 128 (3d Cir.1990). In both *Sapos* and *Wilson,* the court of appeals relied upon alternative holdings to permit the bifurcation of the mortgagee's claim. First, the court in these cases held that section 1322(b)(2) does not prohibit modification of the unsecured component of an undersecured mortgage debt. *Sapos,* 967

F.2d at 926; *Wilson,* 895 F.2d at 128. In support of its holding in *Wilson,* the court of appeals agreed with the Ninth Circuit's view that "because the 'other than' phrase of [section 1322(b)(2)] is best read to refer to secured claims, the 'other than' phrase should be read to limit modification only to that portion of the claim that is secured." *Wilson,* 895 F.2d at 127 (citing *In re Hougland,* 886 F.2d 1182, 1184 (9th Cir.1989)). In addition, the court in both *Wilson* and *Sapos* also held that the anti-modification provision of 1322(b)(2), which by its express terms applies to claims "secured only by a security interest in real property that is the debtor's principal residence," does not apply when the creditor is secured by collateral in addition to the real property covered in the mortgage. *Sapos,* 967 F.2d at 925–26; *Wilson,* 895 F.2d at 128.[4]

The first holding of the Court of Appeals in *Wilson* and *Sapos,* that 1322(b)(2) does not preclude a debtor from modifying the unsecured portion of an undersecured homestead mortgage, has recently been invalidated by the United States Supreme Court in *Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The Supreme Court granted certiorari in *Nobelman* to resolve a conflict among the courts of appeals concerning the following question: "whether section 1322(b)(2) prohibits a Chapter 13 debtor from relying upon section 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence."[5] *Id.* at ——, 113 S.Ct. at 2108.

Commenting on the interpretation of section 1322(b)(2) adopted by the Third Circuit, the Supreme Court in *Nobelman* stated

---

**4.** For example, in *Wilson,* the mortgagee's claim was secured not only by the debtors' residence, but also by "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises." *Wilson,* 895 F.2d at 124. Likewise, in *Sapos,* the mortgagee's claim was also secured by "wall-to-wall carpeting, rents and profits." *Sapos,* 967 F.2d at 925.

**5.** Prior to the Court's *Nobelman* decision, three circuits in addition to the Third Circuit had held

that section 1322(b)(2) allows bifurcation of undersecured homestead mortgages. *See In re Bellamy,* 962 F.2d 176 (2d Cir.1992); *In re Hart,* 923 F.2d 1410 (10th Cir.1991); *In re Hougland,* 886 F.2d 1182 (9th Cir.1989). Conversely, the Court of Appeals for the Fifth Circuit had held that 1322(b)(2) prohibits the modification of undersecured homestead mortgages. *See In re Nobleman,* 968 F.2d 483 (5th Cir.1992), *aff'd, Nobelman v. American Sav. Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

that although this reading of section 1322(b)(2) is "quite sensible as a matter of grammar," it is not necessarily the correct interpretation. *Id.* at ——, 113 S.Ct. at 2111. The Supreme Court explained that because "Congress chose to use the phrase 'claim secured ... by' in section 1322(b)(2)'s exception, rather than repeating the term of art 'secured claim,'" a more reasonable interpretation of the homestead mortgage exception precluding modification of a claim is that it refers "to the lienholder's entire claim, including both the secured and unsecured components of the claim." *Id.* at —— – ——, 113 S.Ct. at 2111. Applying this interpretation of the clause, the *Nobelman* Court held that when the lender's claim is secured only by a lien on the debtor's principal residence, "section 1322(b)(2) prohibits a Chapter 13 debtor from relying on section 506(a) to reduce an undersecured homestead mortgage to the fair market value of the mortgaged residence." *Id.* at ——, 113 S.Ct. at 2108. In light of *Nobelman*, the Third Circuit's first holding in *Wilson* and *Sapos*—that section 1322(b)(2) does not prohibit modification of the unsecured portion of any undersecured homestead mortgage—has clearly been invalidated.

■ Although the impact *Nobelman* has on the Third Circuit's first holding in *Wilson* and *Sapos* is unmistakable, the affect it has on the Third Circuit's second or alternative holding in those cases is not nearly as lucid. As stated above, because the claims held by the mortgagees in *Wilson* and *Sapos* were secured not only by realty, but also by personalty, the court of appeals held that the claims did not fall within the ambit of section 1322(b)(2)'s anti-modification provision. *Sapos*, 967 F.2d at 925–26; *Wilson*, 895 F.2d at 128. The mortgagee's claim in *Nobelman* was also secured by more than a security interest in real property.[6] *See In re Nobelman*, 129 B.R. 98, 99 (N.D.Tex.1991), *aff'd, In re Nobelman*,

968 F.2d 483 (5th Cir.1992), *aff'd, Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In light of this fact, the debtors in *Nobelman* argued on appeal to the district court that section 1322(b)(2)'s anti-modification provision did not prohibit the bifurcation of the mortgagee's claim, because its claim was not, in the words of that clause, secured "only" by a security interest in their principal residence. *In re Nobelman*, 129 B.R. at 104. The district court in *Nobelman* ruled contrary to the Third Circuit's holding on this issue by simply finding the debtors' contention to be without merit. *Id.* For a reason that this Court has been unable to ascertain, neither the Fifth Circuit nor the Supreme Court in *Nobelman* chose to address this issue when analyzing the mortgage in that case.[7] In view of the Supreme Court's reticence, principles of stare decisis command this Court to follow the law as set forth by the Court of Appeals for the Third Circuit. *See Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988) ("[a]bsent a Supreme Court decision to the contrary, district courts are compelled to follow the mandates of appellate courts"); *Spannaus v. United States Dep't of Justice*, 824 F.2d 52, 55 (D.C.Cir.1987) ("until action by the Supreme Court ... supervenes, we must adhere to the law of the circuit"); *Taras v. Commonwealth Mortgage Corp. of America*, 136 B.R. 941, 948 (Bankr.E.D.Pa.1992), *aff'd, Commonwealth Mortgage of America v. Taras*, No. 90–5555 (E.D.Pa. Oct. 26, 1990) (bankruptcy court must follow the law as set forth by the Court of Appeals for the Third Circuit until the Supreme Court directs to the contrary); *In re District 2, United Mine Workers of America v. Hinks*, 67 B.R. 883, 884–85 (Bankr. W.D.Pa.1986) (bankruptcy court must adhere to the articulated law of the circuit even though an intervening Supreme Court

---

6. The mortgagee in *Nobelman* also had a "security interest in an undivided .67% interest in the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents." *In re Nobelman*, 129 B.R. at 99.

7. The court of appeals in *Nobelman* did refer to the additional security interest in its recitation of the facts. *See In re Nobelman*, 968 F.2d at 484 n. 3.

decision casts doubt upon that law). Therefore, even though *Nobelman* clearly invalidates the Third Circuit's first holding in *Wilson* and *Sapos*, I must continue to follow the court of appeal's second or alternative holding in those cases, namely, that section 1322(b)(2)'s anti-modification provision does not apply to a mortgagee's claim that is secured by more than a security interest in the mortgagor's principal residence.

■ Commonwealth contends that the bankruptcy judge here erred in allowing the Debtors to bifurcate its claim "because section 1322(b)(2) proscribes modification of the rights of holders of a claim secured only by a security interest in real property that is the debtor's principal residence." Record and Issues on Appeal, Record on Appeal, at Tab 2. The bankruptcy judge did not state the legal basis he relied upon in allowing the Debtors to bifurcate Commonwealth's allowed secured claim. *See Hammond v. Commonwealth*, No. 90–10093 (Bankr.E.D.Pa. July 30, 1990), Record on Appeal, at Tab 7. Because my review of the legal questions in this case is plenary, I need not limit my inquiry to any one legal basis in resolving the claim-modification issue now before me.

Clearly, in light of the Supreme Court's decision in *Nobelman*, the bankruptcy court's order allowing the Debtors to bifurcate their mortgage cannot rest upon the Third Circuit's holding in *Wilson* and *Sapos* that section 1322(b)(2)'s anti-modification provision does not preclude a debtor from relying upon section 506(a) to modify the unsecured portion of an undersecured homestead mortgage debt. The bankruptcy court's order, therefore, must be reversed unless it does not fall within section 1322(b)(2)'s anti-modification clause.

As noted above, the anti-modification clause of section 1322(b)(2) applies to claims secured *"only* by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). In addition to being secured by the Debtors' residence, Commonwealth's claim is also secured by "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises." Stipulation of Facts, Record on Appeal, at Tab 6, Exhibit A. This additional security provision in the instant mortgage is identical to the language used to create an additional security interest in the mortgage at issue in *Wilson*. *Wilson*, 895 F.2d at 124. As discussed above, the Court of Appeals for the Third Circuit held in *Wilson* that this additional security interest removed the mortgagee's claim from the purview of section 1322(b)(2)'s anti-modification provision. Because the Supreme Court in *Nobelman* did not expressly disturb this second holding in *Wilson*, I am constrained to find that the additional security interest described in the mortgage here, which is identical to the additional security interest in the mortgage at issue in *Wilson*, removes Commonwealth's claim from the ambit of the anti-modification clause of section 1322(b)(2). Accordingly, because section 1322(b)(2) does not apply to Commonwealth's claim, I conclude that the bankruptcy court did not err in allowing the Debtors to bifurcate this claim pursuant to section 506(a) of the Bankruptcy Code.

As stated above, however, the bankruptcy court limited Commonwealth's secured claim to the stipulated fair market value of the debtors' residence. Because the bankruptcy court failed to take into account the value of the additional security interests provided for in the mortgage in determining Commonwealth's allowed secured claim, I must remand this case for an inquiry into whether any adjustment to that claim is required.

### C. *The Extent of the Secured Coverage*

■ Commonwealth also contends that the bankruptcy court should have found it to be secured to the full extent of the mortgage insurance coverage Commonwealth has under the National Housing Act. *See* Record and Issues on Appeal, Record on Appeal, at Tab 2. Commonwealth has made this exact contention on appeal in two other cases in this district. *See Commonwealth Mortgage of America v. Taras*, No. 90–5555 (E.D.Pa. Oct. 26,

1990); *In re Ronan v. Commonwealth Mortgage Corp. of America*, No. 90–5821 (E.D.Pa. Nov. 15, 1990).[8] On both occasions, Commonwealth's contention was rejected. *Id.* In rejecting Commonwealth's contention in *Taras*, Judge DuBois cited *In re Lopez*, 75 B.R. 961 (Bankr.E.D.Pa.1987), aff'd, 82 B.R. 712 (E.D.Pa.1988).[9] In *Lopez*, the bankruptcy court was confronted with the same issue Commonwealth raises here, that is "[w]hat 'value' should be used in determining secured status: the fair market value of the mortgaged premises or the amount which the creditor could receive pursuant to a government mortgage insurance program if it were allowed to foreclose on the premises." *In re Lopez*, 75 B.R. at 961. Noting that the overwhelming weight of authority instructed it to "utilize the fair market value of the premises to determine the extent of the Mortgagee's claim," the bankruptcy court in *Lopez* declined to extend the mortgagee's secured status to the amount the mortgagee could have received as an insured if it were allowed to foreclose on the premises. *Id.* I agree with the reasoning of *Taras* and *Lopez* and thus conclude that the bankruptcy court did not err in limiting the amount of Commonwealth's secured claim to the fair market value of the Debtors' residence, notwithstanding Commonwealth's statutory insurance.

## IV. *CONCLUSION*

For the foregoing reasons, the bankruptcy court's judgment allowing the bifurcation of Commonwealth's claim into secured and unsecured components shall be affirmed, and this case will be remanded for an inquiry into whether any adjustment of the secured component of Commonwealth's claim is required.

### *ORDER*

AND NOW, this 2nd day of July 1993, upon consideration of the record on appeal (Document No. 1), as well as the appellate brief and legal memorandum of Commonwealth Mortgage Company of America, L.P. ("Commonwealth") (Document Nos. 3 and 5), the appellate brief of Michael and Jeanette Hammond ("the Debtors") (Document No. 4), and the United States Supreme Court's recent decision of *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the decision of the bankruptcy court in the above-captioned bankruptcy allowing the bifurcation of Commonwealth's claim into secured and unsecured components is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the order of the bankruptcy court dated July 30, 1990 is hereby **VACATED** and that this case is **REMANDED** to the bankruptcy court for additional proceedings consistent with the attached memorandum.

---

8. Although Commonwealth's name appears in different forms in the captions of the cited cases, it has acknowledged in its brief to this Court that it was indeed the appellant in these cases. Brief of Appellant, at 1 (Document No. 3).

9. Judge DuBois also cited *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair Enterprises,* the Supreme Court stated that section 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is affixed; the remainder of that claim is unsecured." *Id.* at 239, 109 S.Ct. at 1029.